UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MARTIN J. WALSH, Secretary, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| THE ALIERA COMPANIES, a Delaware | ) | |
| Corporation FORMERLY KNOWN AS | ) | |
| ALIERA HEALTHCARE, INC., | ) | |
| AND SHELLEY STEELE, an Individual. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR ERISA VIOLATIONS

Martin J. Walsh, Secretary of the United States Department of Labor (the "Secretary"), alleges as follows:

1.      This action is filed under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*, against Aliera Healthcare, Inc. ("Aliera") and its Chief Executive Officer, Shelley Steele ("Steele") (collectively "Defendants"), for engaging in transactions prohibited by ERISA, paying themselves and affiliated companies millions of dollars from ERISA-covered plans' assets without the agreement of, or disclosure to, the employer plan sponsors or plan participants.  In doing so, they engaged in self-dealing in violation of the prohibited transaction provisions of ERISA.

1

2.      By taking enormous payments from an account holding assets of its employer plan clients, without the agreement of or disclosure to the plans' employers and participants, Aliera also breached its fiduciary duty of loyalty, and benefitted themselves at the plans' expense, in violation of ERISA's prohibited transactions provisions.

3.      The Secretary seeks a full refund of the money Aliera, Steele, and their affiliates were paid from ERISA-covered employer groups and to have Aliera, its subsidiaries, and Steele permanently barred from acting as a fiduciary or service provider with respect to any ERISA-covered plan.

4.      This action arises under ERISA and is brought to obtain relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.      Venue for this action lies in the Northern District of Georgia pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

7.     The Secretary, pursuant to ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5), has authority to enforce the provisions of Title I of ERISA by, among other things, the filing and prosecution of claims against persons who violate ERISA.

8.     Aliera is a Delaware corporation headquartered in Atlanta, Georgia, within the jurisdiction of this Court, that provides services to employer sponsored ERISA group health plans and also provides health coverage purchased by individuals.

9.     Defendants provided services to more than a thousand employer group health plans, as defined by ERISA § 3(1), 29 U.S.C. § 1002(1), that were established by individual employers and subject to ERISA-coverage pursuant to ERISA § 4(a), 29 U.S.C. § 1003(a).

10.     Aliera received payments from ERISA-covered employer group plans and from individuals who bought its health care products, and deposited those commingled payments in Aliera's Wells Fargo account ("Account 0973").  Aliera and Steele, who was Aliera's CEO and the signatory for Account 0973, exercised control over the funds in that account, including the employer group plans' assets, consisting of employer and employee contributions.  Aliera and Steele's exercise

of control included paying money from that account to themselves and their affiliates, paying health claims they determined should be paid, and paying third parties they selected and employed.

11.     By exercising control over contributions which are plan assets within the meaning of 29 C.F.R. § 2510.3-102, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

### Party In Interest Transactions

12.     As fiduciaries and service providers to the employer group plans, Defendants were also parties in interest within the meaning of ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).  Steele was also a party in interest within the meaning of ERISA § 3(14)(E) and (H), 29 U.S.C. § 1002(14)(E) and (H), because she was an officer of Aliera and 89% owner of Aliera's stock.

13.     During the time they were fiduciaries, Defendants made payments to Aliera totaling $83,960,478.81 from Account 0973.

14.     During the time they were fiduciaries, Defendants made payments from Account 0973 to Steele totaling $6,123,274.77, and made periodic loans from that account to Steele totaling $3,824,582.93.  The loans did not provide for any payment of interest and had no repayment terms.  Steele only repaid $3,226,028.87 of the loans.

15.     Steele was also the 100% owner of Ciel Capital Group ("Ciel"). Based on Steele's ownership of Ciel, Ciel was a party in interest within the meaning of ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).  Ciel ostensibly provides administrative oversight and plan management, design and configuration services, and employed Steele's husband, Timothy Moses.  During the time Defendants were fiduciaries, they made payments to Ciel totaling $6,520,155 from Account 0973.

16.     By July 2019, Aliera initiated a corporate reorganization and changed its name to "The Aliera Companies."  The three entities listed below were wholly owned subsidiaries of The Aliera Companies, and therefore parties in interest within the meaning of ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G).  While the Defendants were fiduciaries, they paid each of those wholly owned Aliera subsidiaries the following amounts from Account 0973:

   i.      Advevo LLC ("Advevo")--$77,071.85;

   ii.     Ensurian Agency LLC (formerly known as Aliera Healthcare of Georgia LLC) ("Ensurian")--$942,454.20; and

   iii.    Tactic Edge Solutions LLC ("Tactic Edge")--$262,049.32.

17.     Timothy C. Moses ("Moses") is Steele's husband. As the husband of Steele, who is a fiduciary to the plans, and owner of Aliera, a service provider for

the plans, Moses is a party in interest within the meaning of ERISA § 3(14)(F), 29

U.S.C. § 1002(14)(F).  On July 11, 2018, Defendants made a payment of

$28,333.99 to the American Express credit card of TC Moses.

18.     Upon information and belief, Steele was a manager of and owns or

has an ownership interest in Burdette Atlanta LLC ("Burdette") which in turn owns

Steeles's personal residence located at 131 Burdette Road, Atlanta, GA 30327

("Burdette Property").  Based on Steele's ownership and management affiliation

with Burdette, Burdette is a party in interest within the meaning of ERISA §

3(14)(G), 29 U.S.C. § 1002(14)(G).  On June 19, 2017, Burdette bought the

Burdette Property for $2.4 million and, during the relevant time period, Defendants

transferred from Account 0973 payments totaling $100,000 to a Burdette account

which were, upon information and belief, used to make Burdette Property

mortgage payments.

19.     Through the payments described in paragraphs 13-18 above,

Defendants, while fiduciaries of the plans, made payments of more than $102

million to parties in interest from Account 0973.

**GENERAL ALLEGATIONS**

20.     In December 2015, Moses and his wife, Steele, formed Aliera as a

privately held Delaware corporation under the name Aliera Healthcare, Inc.  Moses

is a convicted felon who was convicted of federal securities fraud and perjury in connection with a business he owned in 2005.  Moses was sentenced to over six years in prison and ordered to pay $1.65 million in restitution.  *See United States v. Moses*, Case No. 1:04-CR-508-1-CAP.

### Aliera's Creates Unity Healthshare, LLC.

21.     Aliera initially partnered with the Virginia-based Anabaptist Healthshare ("Anabaptist"), a non-profit corporation that operated as a Health Care Sharing Ministry ("HCSM") allegedly limited to members of the Gospel Light Mennonite Church of the Anabaptist faith.  Under 26 U.S.C. § 5000A(d)(2), an HCSM is defined as a tax-exempt organization that has been in existence since December 31, 1999, in which health care costs are shared among members with common ethical or religious beliefs.

22.     In late 2016, Aliera and Anabaptist entered into a preliminary agreement to market its HCSM product through a new entity that the parties would name Unity Healthshare, LLC ("Unity").  On November 10, 2016, Tim Moses signed a Memorandum of Understanding as Aliera's Executive Director and Tyler Hochstetler signed it as an Anabaptist Director.

23.     On February 1, 2017, the parties formalized their agreement.  The February 1, 2017 Agreement was signed by Tim Moses as Aliera's Executive

Director, Eldon Hochstetler as an Anabaptist Director, and Tyler Hochstetler as a Unity Director.

24.     The February 1, 2017 agreement allowed Aliera to combine HealthPass, its own minimum essential coverage product, with the Unity HCSM, and sell the combined product to individuals and employer groups nationwide. Although it claimed exemption from federal and state requirements as a HCSM, Aliera did not limit its market and sales to members of the Anabaptist faith.  By mid-2018, after the Anabaptist leadership determined that, among other things, Tim Moses had written unauthorized checks to himself from Unity's funds, it severed the relationship with Aliera.

**Aliera Creates Trinity Healthshare Inc.**

25.     Having lost Unity as a vehicle to market its HCSM products, Aliera incorporated a new alleged HCSM, Trinity Healthshare Inc. ("Trinity").  Trinity was incorporated in Delaware on June 27, 2018.  William Thead III, a personal friend of the Steele/Moses family, became Trinity's Chairman.  (Trinity later changed its name to Sharity Ministries).

26.     On August 13, 2018, Aliera executed a contract with Trinity.  The Trinity Agreement gave Aliera the exclusive right to develop, market, and sell Trinity's plans, and it made Aliera responsible for determining product pricing for

Trinity plans and medical expense eligibility.  The Agreement gave Aliera ownership of Trinity's membership roster.  When incorporated, Trinity had no members enrolled in its products.

27.     The Trinity Agreement also delegated all of Trinity's financial accounting and customer billing functions to Aliera.  Under the Trinity Agreement, new members enrolled with Trinity were "deemed to be Aliera consumers."  Their enrollment fees were required to be paid directly into an Aliera bank account and only later transferred to a Trinity bank account (to which Aliera was a signatory) for the members' claims payments.  Aliera also was responsible for managing third-party administrators that processed medical claims.

28.     Although most of Aliera's business is selling healthcare to individuals, from at least November 2015 until December 2019, Aliera created, marketed, sold, and administered health coverage for approximately 1,025 employers across 39 states for ERISA-covered employer plans.  Aliera sold healthcare benefit products to self-funded ERISA-covered employer groups that bought Aliera coverage as a group health plan for their employees.  To fund plan benefits, these employers made healthcare plan contributions to Aliera from their own funds and from contributions withheld from employees' pay.  After the

Department initiated an investigation of Aliera, Aliera represented that it ceased selling any products to employer groups after December 2019.

## Aliera's Operating Bank Account 0973

29.     All healthcare payments to Aliera from individuals and from employer group plans, were deposited into Aliera's operating Account 0973. Aliera received a combined total of at least $543,941,705 of healthcare payments in that account from employer groups plans and from individuals who bought health care products.  Aliera only used approximately $189,226,916 of that money to pay healthcare claims.

30.     Aliera billed employers monthly for healthcare payments for employer group plans.  For the period of January 2016 to November 2019, Aliera billed employer group plans for healthcare coverage $17,086,015.  Upon information and belief, that amount was deposited into Account 0973.

31.     Because Aliera commingled payments from ERISA-covered employer plans with payments made by individuals, the percentage of employer plan contributions (approximately $17,086,015) to the total amounts contributed to Account 0973 (approximately $543,941,705)—approximately 3.14%, represents the portion of plan assets that were in Account 0973, and the percentage of prohibited payments to Aliera, Steele, and their affiliates from that account that are

attributable to ERISA-plan assets.  The payments that Defendants made to Aliera, Steele, and affiliates from Account 0973 were all prohibited transactions, and totaled more than $102 million.  Approximately 3.14% of those payments came from the assets of ERISA plans.

**Bankruptcy Proceedings**

32.     Sharity (formerly Trinity) filed bankruptcy on July 8, 2021, and Aliera was forced into Chapter 11 by the filing of an involuntary petition against it on December 3, 2021.  A chapter 11 plan of liquidation for Sharity was confirmed on December 2, 2021 pursuant to which a Liquidating Trust has been established through which distributions will be made to creditors and an adversary proceeding by the Liquidating Trust against Aliera and various of its wholly owned subsidiaries pursued.  The Sharity plan of liquidation includes a "Plan Injunction," which has an explicit carveout for actions against Aliera, its subsidiaries and affiliates, and Aliera's current and former officers, directors, shareholders.  Claims against Sharity are estimated to be $300 - $600 million or more, and distributions to creditors are estimated to be only 0-10% per dollar.  The Department filed an unliquidated proof of claim in the Sharity bankruptcy.  Section 362(b)(4) of the Bankruptcy Code provides an exception to the automatic stay, 11 U.S.C. § 362(a),

for suits by governmental entities, which allows this lawsuit to go forward, but will bar enforcement of any money judgment against Aliera outside of the bankruptcy.

## State Enforcement Actions

33.     At least 16 states have taken enforcement actions against Aliera and, in some actions, its individual principals.  New York regulators issued one of the most comprehensive orders, *In the Matter of: The Aliera Companies, Inc., Trinity Healthshare Inc*., No. 2020-0039-C (Statement of Charges and Notice of Hearing Oct. 20, 2020), summarized as follows.  The New York State Department of Financial Services ("DFS") brought an enforcement action finding that Steele and Timothy Moses formed Aliera in 2015 to evade state insurance law by associating with a Mennonite organization and thereby claim their illegal insurance scheme was selling products through a purported HCSM.  By mid-2018, church leaders discovered that Tim Moses had written unauthorized checks to himself from the HCSM's funds and sued him.  Aliera then created Trinity to use "as a shell entity to conduct an unregulated insurance business for its own profit."  After Trinity's incorporation, Aliera and Trinity entered into an agreement in 2018 "wherein Aliera was named the administrator, exclusive marketer, and program manager for Trinity, effectively controlling all aspects of Trinity's business."  Aliera also "directed that enrollment fees from Trinity members would first be paid directly

into an Aliera bank account, and only subsequently transferred to a Trinity bank account (to which Aliera was a signatory), for the actual payment of members' medical costs." DFS found that the Agreement gave Aliera control over an "an unacceptably high proportion of consumer premiums." Citing an example, DFS noted that one plan was left with "only approximately 16% [of the premiums] in reserve for members medical benefits." For another plan, "only 9.8% of collected fees were allocated to reimburse members' medical expenses, with the remaining fees earmarked mostly for alleged administrative costs and commissions." DFS then contrasted these ratios to the ACA requirement that insurers spend at least 80% of premium dollars on medical benefits for members, noting, "[i]n sum, only a small fraction of premiums was available to reimburse medical expenses, resulting in unpaid claims for consumers who were led to believe that they had purchased reliable health care coverage."

**FIRST CLAIM (ERISA § 406(b) Violation: Self-Dealing in Plan Assets)**

34.     Pursuant to Rule 10(c), Fed. R. Civ. P., the Secretary adopts and incorporates by reference paragraphs 1 through 33, inclusive. Defendants violated ERISA § 406(b)(l), 29 U.S.C. § 1106(b)(l), by causing the payments to Aliera, Steele, and affiliate person or entities, as set forth in paragraphs 1 through 33.

35.     Defendants failed to protect the interests of the plans and violated their fiduciary duties of loyalty by, among other things, depositing all employer and employee contributions into Aliera's own account, and making payments from that account to themselves and their affiliates.

36.     Defendants, who were fiduciaries and parties in interest, violated section ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), by dealing with the assets of the plans in their own interest and for their own account by distributing to themselves fees and other payments that had not been agreed upon by or disclosed to the fiduciaries of the employer group health plans who were independent of Aliera.

37.     All of the payments made to themselves, their affiliates, and other parties in interest from Account 0973 were prohibited transactions.  From January 2016 to November 2019, Defendants, who were fiduciaries, caused payments of more than $102 million to parties in interest, including themselves and their affiliates, from an account that held plan assets.  Those payments were prohibited transaction under ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

## SECOND CLAIM (ERISA § 404(a)(1)(A) Violations:
### Breach of Fiduciary Duty of Loyalty)

38.     Pursuant to Rule 10(c), Fed. R. Civ. P., the Secretary adopts and incorporates by reference paragraphs 1 through 37, inclusive.  Defendants violated ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l), by causing, engaging in or allowing the acts or omissions set forth in paragraphs 1 through 37.

39.     ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l), requires fiduciaries to discharge their duties with respect to the plans solely in the interest of the plans' participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of plan administration.  This is referred to as the fiduciary duty of loyalty.

40.     Defendants failed to act solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and the beneficiaries of the plans and defraying reasonable expenses of administering the plan, when they deposited all employer and employee contributions into their own corporate account, which they comingled with other assets, controlled and then distributed the plans' assets at will and for their own benefit and the benefit of their affiliated entities and other parties in interest.

41.     As a result of their breaches of fiduciary duty, the Defendants have caused the employer group plans to suffer financial losses for which they are jointly and severally liable pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a).

## PRAYER FOR RELIEF

WHEREFORE, the Secretary respectfully requests that:

1.  Defendants, jointly and severally, restore all losses to the plans;

2.  Defendants be permanently enjoined from serving directly or indirectly through any person or entity as service providers or fiduciaries for, or having control over the assets of any employee benefit plan subject to ERISA, and enjoin Defendants from engaging in any further violations of Title I of ERISA;

3. Award the Secretary the costs of this action; and

4.  The Court grant such further relief as may be just and equitable.

Dated: May 27, 2022


OF COUNSEL:

Ryan K. Buchanan
United States Attorney

Lori M. Beranek
Assistant U.S. Attorney
600 U.S. Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
404/581-6000
Georgia Bar No. 053755
Lori.beranek@usdoj.gov

Respectfully submitted,

For the Secretary:

SEEMA NANDA
Solicitor of Labor

G. WILLIAM SCOTT
Associate Solicitor
Plan Benefits Security Division

ROBERT FURST
Counsel for Litigation

By: /s/ *Christine D. Han*
        CHRISTINE D. HAN
        Senior Trial Attorney
        Han.christine.d@dol.gov
        New York Bar No. 5227053

Marcia Bove
Senior Trial Attorney
Maryland Bar No. 8401010007

Leonard Gerson
Trial Attorney
New York Bar No. 2138568

Office of the Solicitor
Plan Benefits Security Division
U.S. Department of Labor
P.O. Box 1914
Washington, DC 20013
Tel: (202) 693-5600
Fax: (202) 693-5610

Attorneys for Plaintiff